PENNSYLVANIA RAILROAD COMPANY *v.* BELL CONCRETE CONSTRUCTION COMPANY, INC.

*Railroad Car—Unexpected Movement on Siding—Truck Near Track—Contributory Negligence—Last Clear Chance.*

In an action against a railroad company for injury to a motor truck, which, while standing close to a railroad siding, was struck by a freight car, *held* that the jury could find from the evidence that the unexpected movement of the car was caused by the failure of the railroad men to tighten the brakes of this and other cars while standing on a grade on which gravity might move them, or to couple the cars properly, or by their hitting the car from behind, or all of these combined.          pp. 21, 22

If a railroad company, in allowing a car to descend on a siding track with a down grade, was negligent as regards persons whose work required them to cross the track, it was also negligent as regards a truck which stopped near the track while waiting to load gravel.          pp. 22, 23

The chauffeur of a truck was not guilty of negligence as a matter of law because he placed his truck so close to a railroad siding that a car moving on the track struck it, when a movement of a car at that time was not to be anticipated, except by some accident or negligence, and the space in which the truck stopped, being between two tracks, was ordinarily used for unloading material from cars on one of the tracks.

pp. 23, 24

Plaintiff cannot invoke the doctrine of last clear chance unless he shows knowledge by defendant or its agents of plaintiff's peril, and that there was time after such knowledge within which to make an effort to save him from the impending danger.

p. 24

In an action against a railroad company on account of an injury to a truck, caused by the unexpected descent of a car which, with others, had been left standing on a grade, it was error to grant a prayer that, even if the chauffeur of the truck was negligent in stopping the truck so close to the track, yet the verdict must be for plaintiff if the railroad employees could by the exercise of ordinary care have avoided the accident after they saw or could have seen that the truck was in a dangerous position, since the railroad employees had left before the truck came, and there was no time to stop the car after it started.

pp. 24, 25

*Decided March 24th, 1927.*

Appeal from the Superior Court of Baltimore City (DUKE BOND, J.).

Action by the Bell Concrete Construction Company against the Pennsylvania Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Ralph Robinson,* for the appellant.

*Walter V. Harrison* and *Charles A. Trageser,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

The defendant railroad company appeals from a judgment against it for damages to a motor truck injured in collision with a railroad car which moved unexpectedly on a siding. The siding is one of several public sidings adjacent to the place of business of Alan E. Barton, a dealer in sand and gravel in Baltimore City, and used by him for unloading railroad cars and loading the trucks of his customers. From the track immediately next to Barton's place, he unloaded gravel. There was a pit under that track to receive the dumped gravel, and Barton loaded trucks from the pit by a movable crane and bucket. Cars of sand he unloaded from the second track, by the crane and bucket, if they were available, and by shoveling by hand into trucks backed in over the first track if the crane and bucket were not available. A railroad engine and crew customarily placed the cars on the tracks conveniently for Barton and his men, and the latter would subsequently move them, by gravity, into and out of position, as needed. There was a slight grade at the place. If the cars would not run by gravity, a truck would pull them into place. On the side of Barton's place, back from the first track at a distance which the plaintiff's chauffeur described as just enough to let two trucks squeeze through, there were high piles of unloaded gravel, and the space between them and the track was used as a passageway for trucks.

At the time of the accident there was a car over the gravel pit, and, about ten minutes before, the railroad men had shifted and placed four or five additional cars of gravel some distance above, leaving an open stretch of the first track between those cars and the car at the pit. The train crew had finished the shifting and left, no shifting engine was seen at the time of the accident, and there was nothing more for the train crew to do there at the time. There was a truck being loaded at the gravel pit, and others were waiting beyond the pit, when the appellee's truck backed down the passageway beside the piles of gravel to wait for a load of gravel, and, in order to leave space for the loaded truck to come out, drew

close to the open portion of the first track, and stopped there. While it was there, a loud noise of cars was heard on the railroad above, and the nearest car of gravel, without any trainman or other person on it, moved down the track over the open space; and, before the appellee's chauffeur could move out of its way, struck his truck and damaged it. A trainman nearby, and Barton, jumped on the car and tightened the brakes. Barton was the only witness examined on the cause of the movement of the car, and he said: "The cars made a terrible noise (clapping hands), and I turned around and I saw right away that the brakes were not on them, and they had come uncoupled, or had not been coupled." He presumed there was an impact from a train at the other end. He did not see any trainmen working on the track up as far as the curve, and there was no shifting going on. The brakes, he said, were not tight enough, because if they had been the cars would have sat all right. The fact is not explicitly stated (and one of the difficulties in this case arises from the lack of explicit testimony on important facts), but from the facts that Barton was not ready to have another gravel car moved, and none of his men were on the car which did move, it would seem to be inferable that they had not handled it during the ten minutes since the trainmen left it. Moreover, their handling would produce none of the noise described, on starting. Therefore, it seems that the jury might properly have found that the cause of the car's moving was the failure of the railroad men to tighten the brakes of cars standing on a grade on which gravity might move them, or to couple the cars properly, or their hitting it from behind, or all of these together.

The only exceptions brought to this court for review are those taken to rulings on prayers for instructions. One of these rulings was the rejection of a prayer for direction of a verdict for the defendant railroad company on the ground that there was no legally sufficient evidence to establish negligence on the part of its trainmen in causing the accident. Evidence from which the jury might find that acts or omissions of the trainmen caused the car to move has been recited.

If it was to be expected that Barton and his men and the trucks of his customers might be going in and out over the track left open, or standing on it, to load sand from the second track, and this seems to be the effect of the testimony, then it was negligent to start the car moving unexpectedly on the first track, because of the likelihood of injuring the men working there. And in applying the rule of liability for such negligence, no distinction can be drawn between the men whose work, getting sand, required them to cross the track, and this one man with his truck, who stopped at the edge of it merely for convenience while waiting to load gravel. The cars were placed on the sidings for the purpose of letting men work about them, generally, and without distinction as to the movements the men might make. See *Beven on Negligence in Law,* 10, 11 and 446.

It is contended that, in placing the truck where it was close to or on the first track, so that a moving car might strike it, the plaintiff's chauffeur was so clearly guilty of contributory negligence that the court should have directed a verdict for the defendant because of that fact. But in our opinion that question could not be disposed of by the court. As, according to this evidence, a movement of the car at that time was not to be anticipated except by some accident or negligence, and the space appears to have been used for unloading sand from the second track, it could not be held by the court that the chauffeur should, under these circumstances, have acted in anticipation of a movement of the car. On this same point of contributory negligence, it is argued that there was no necessity for the truck's drawing up so close to the track, as the space between the track and the piles of gravel was wide enough to permit the loaded truck and this truck to pass each other, clear of the track; and argued also, that the chauffeur could have approached the gravel pit from the other direction altogether. Failure to adopt either of these possibilities does not seem to us to fix contributory negligence on the chauffeur beyond controversy. The lack of any reason to expect danger from a moving car at the

time would have to be weighed against such a conclusion. The defendant seems to us to have received all he was entitled to by having the question of contributory negligence left to the jury, as it was.

Both parties requested instructions to the jury on the possibility that the chauffeur might be found negligent in stopping and waiting so close to the track. The defendant's prayer was granted and need not be considered. The plaintiff requested two, which the court modified and consolidated, instructing the jury that, even if they found such negligence on the chauffeur's part, "nevertheless, if the jury believe from the evidence that the agents and servants of the defendant could by the exercise of ordinary care and caution have avoided the accident complained of after they saw or by the use of ordinary care could have seen that the plaintiff's automobile truck was in a position of danger, then the verdict of the jury must be for the plaintiff." This is, of course, the form commonly used to instruct a jury on liability for failure, after the contributing causes have been set in motion, to take a "last clear chance" afforded to avoid a danger to which the plaintiff's negligence has contributed; and it is appropriate to a case in which the defendant would, because of contributory negligence, be under no liability except for that last clear chance. And the last clear chance implies notice, actual or constructive, and a subsequent opportunity to avoid the danger. "But in order that this qualification of, or exception to, the general rule may be successfully invoked by the plaintiff, he must show knowledge on the part of the defendant or its agents of the peril in which he, the plaintiff, was placed, and that there was time after such knowledge within which to make an effort to save him from the impending danger." *Md. Cent. R. Co. v. Neubeur,* 62 Md. 391; *State, use of Kolish, v. Wash., B. & A. Elec. R. Co.,* 149 Md. 443, 458. The instruction seems inappropriate to this case because, so far as appears from the evidence, the railroad trainmen had left the place before this truck came, and could not have noticed its proximity to the track; and after

the car was started there was no time to stop it before the accident. The result of the granting it was that the jury, inquiring whether there was negligence in leaving the cars without proper braking or coupling, and hitting them from behind while they were in that condition, were instructed that if the trainmen could have avoided the accident after they could by the use of ordinary care have seen the dangerous position of the truck, the verdict must be for the plaintiff. It seems not unlikely that, under the circumstances, the instruction would merely confuse the jury; but that if they placed any interpretation upon it, that interpretation must have been either that the court saw ground for finding that the trainmen could have seen and avoided the danger after the cars had been set in motion, which was not true, or that liability of their employer would follow a failure to return and look for the danger before the cars started, which is not the law, because liability on that ground would be negatived by the contributory negligence which the instruction supposes. For error in granting this instruction, the judgment should, in the opinion of this Court, be reversed.

> *Judgment reversed, and new trial awarded,*
> *with costs to the appellant.*