PEREGOY, Use of Himself and GLOBE INDEMNITY
COMPANY *v.* WESTERN MARYLAND
RAILROAD COMPANY

[No. 117, October Term, 1952.]

*Decided April 17, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS and HAMMOND, JJ.

*Daniel E. Klein* and *W. Giles Parker,* with whom was *Ellis M. Fell,* for appellant.

*Paul S. Parsons* and *Hilary W. Gans,* for appellee.

SOBELOFF, C. J., delivered the opinion of the Court.

The appellant was injured when his employer's truck was struck by a coal hopper of the Western Maryland Railroad on a siding near which he had placed his truck while loading materials. After an adverse jury verdict, and judgment thereon, he brings up for review certain rulings of the trial court on the evidence and in the instructions.

The facts adduced are scarcely in dispute. For approximately a quarter-century the Pen-Mar Company, dealers in building supplies, has occupied a large area in the railroad company's Fulton Yard, in Baltimore City. There they received, unloaded, and stored materials shipped to them by rail. Such stored materials would remain sometimes for considerable periods till needed. They would then be reloaded to the Pen-Mar Company's trucks for delivery to customers. The occupancy was not under any written lease from the railroad, but was continuous over the years, and was advantageous to both the railroad, whose freight business was thus stimulated, and the Pen-Mar Company, which enjoyed a useful facility in its operations.

On September 5, 1950, the appellant, who had been employed as chauffeur for the Pen-Mar Company for twelve years was ordered to load his truck with flue liners from a pile situated in close proximity to the spur siding. These flue liners had been unloaded from a shipment over that siding some weeks earlier. After parking the truck close to the pile and close to the

track, he proceeded with his work. The track was clear but for an empty coal hopper standing about a car's length away from the truck. This was a "bad order car" which had been placed on the siding by railroad employees to be moved later to the repair shop. The accident happened when, without warning to the appellant, a switching engine pushed a box car against the coal hopper, propelling it a distance of 8 or 10 feet. This caused the coal hopper to collide with the truck and throw the plaintiff to the ground.

The appellant, who had been in Pen-Mar's employ for twenty years, and his witnesses related on the stand what happened on the morning of September 5. After testifying that the manner of loading which he followed on this occasion was customary, he testified that he was given no warning. He was about to testify also to the custom of the railroad to give warning when it moved cars on this spur siding. Objection to such testimony was interposed and sustained. Counsel for the appellant renewed the effort to prove the railroad's custom of giving warning under such circumstances and the appellant's reliance on such custom. The railroad's counsel insisted, however, that appellant should be confined to what happened on this one occasion. The trial judge again sustained the objection.

The engine crew testified that they were unaware of the presence of the truck and of the appellant till after the collision. They failed to see the truck as their switching engine passed by on an adjacent track shortly before the accident. They swore that they also did not see the truck or the plaintiff or his three helpers when the box car was shoved against the coal hopper, because there was a curve in the track which put the coal hopper between them and the truck.

At the conclusion of the testimony the court instructed the jury as a matter of law that the appellant was a licensee and not an invitee and that the railroad, therefore, owed him no duty except reasonable care to avoid injuring him after *actually* discovering his danger. The

court rejected the appellant's requested instruction that the railroad was liable if it could have avoided injuring him after it *saw or could have seen* him in a position of danger. The jury was further instructed that the appellant was bound to anticipate that cars would be shifted back and forth, and that if he put his truck so near to the track as to cause it to be in reach of the hopper care he was guilty of contributory negligence disentitling him to recovery.

First we consider the question, was the appellant an invitee or a licensee and what was the measure of care due him by the appellee? A licensee is one privileged to enter another's land by virtue of the possessor's consent, for the licensee's own purposes. He must take the property as he finds it, the owner or occupant undertaking no duty to a visitor who comes for his own pleasure or convenience, except that, if he becomes aware of the licensee's presence, the licensor must not injure him wilfully or entrap him. *Brinkmeyer v. Iron and Metal Co.*, 168 Md. 149, 177 A. 171. An invitee or business visitor is one invited or permitted to enter or remain upon land for a purpose connected with or related to the business of the occupant. He is entitled to the exercise of ordinary care by the owner or occupant of the premises to discover as well as to avoid any danger which might threaten him through the use of any agency under his control. *Balto. & Ohio R. Co. v. Walsh,* 142 Md. 230, 120 A. 715.

Appellee insists that the appellant's status was that of a licensee because in its view he was performing at the time of the accident duties for his employer which had no relation to unloading freight from a freight car, and that such duties were of no benefit to the railroad. It was on this theory that the court refused to admit evidence offered by the appellant as to a custom of the appellee to give warning of the approach of a locomotive on the spur siding; for the failure to give such warning on the morning of the accident could have no bearing on the issue if the appellant was a licensee and

not entitled to warning in the absence of actual knowledge of his dangerous position.

We think appellee's interpretation is too narrow. This was not a mere casual use of railroad property for the sole benefit of the Pen-Mar Company. The uncontradicted evidence showed that the relationship, though not formalized in a written instrument, had continued for approximately twenty-two years; that large quantities of materials, regularly shipped on the Western Maryland Railroad, were customarily unloaded on this lot and retained there for varying periods to the knowledge of the railroad. Storing these articles on the land of the railroad was to its advantage, as well as Pen-Mar's. It promoted freight business for this carrier. It is inconceivable that the railroad would allow this valuable property to be used for so many years if it did not derive a benefit from the arrangement. The mutuality of the benefits is palpable from the undisputed facts. As we view these facts, it was error for the court to rule as a matter of law that the habitual use of this area by the Pen-Mar Company with the full knowledge and approval of the railroad was not of mutual benefit, and that they were bare licensees.

In III *Elliott on Railroads*, 828, it is said: "To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must at least be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the subject of the visit may not be for the benefit of the occupant", citing *Bennett v. Louisville & C. R. Co.*, 102 U. S. 577, 26 L. Ed. 235.

Being an invitee, the plaintiff's status made it incumbent upon the railroad to use ordinary care in their operations in the yard. This duty was owing the plaintiff, notwithstanding the fact that he was at the bend or curve in the track. Since the flue liners had been stacked there for some time, it cannot be said that the

appellee had no knowledge of their location with respect to the hopper car. The crew's vision was obscured; there was all the more reason to proceed cautiously.

But even if the legal status of the appellant is that of an invitee, it was still his burden to show negligence on the part of the railroad. The appellant contends that he was prevented from meeting this burden by the trial court's ruling excluding testimony as to the railroad's custom of warning those engaged in work near or about the spur track.

The first difficulty with this argument is that the record contains no proffer to show precisely what the testimony, if admitted, would have established. However, we are disinclined to dispose of the case on this narrow procedural ground. There is authority in this State for the proposition that while ordinarily a proffer is desirable and sometimes indispensable to indicate the significance of the question and of the court's action in sustaining the objection, nevertheless, where the tenor of the questions and the replies they were designed to elicit is clear, a proffer in the record is not a necessary prerequisite for a review of the ruling. *Calvert County v. Gantt*, 78 Md. 286, 28 A. 101, 29 A. 610. Also see *Banks v. McCosker*, 82 Md. 518, 34 A. 539; *Bauernschmidt v. Md. Trust Co.*, 89 Md. 507, 43 A. 790; *Mt. Vernon Co. v. Teschner*, 108 Md. 158, 69 A. 702, 16 L. R. A., N. S., 758, and *United States v. Chichester Chemical Co.*, 298 F. 829, all of which approve and apply the rule of *Calvert County v. Gantt*. Cf. *Kurrle v. Baltimore City*, 113 Md. 63, 67, 77 A. 373, which distinguishes the *Gantt* case.

If the court had permitted testimony of a railroad custom to give warning this would nevertheless not have helped the appellant's case. The following questions were asked:

"Q—Mr. Peregoy, did you believe when you parked the truck there it was clear of the track?

A—Yes, sir.

Q—Well, did you think it was in danger of being hit?

A—No, sir."

The alleged customary warning would not have helped him because he was not relying on it, thinking himself beyond danger. More over, there is no reason to suppose that if the crew of the moving engine, whose view was obscured by the hopper car as well as by the curve in the track, had actually seen him, they would have appreciated his danger any more than he did. If the appellant, who parked the truck, thought he was free of the track, could the crew be held negligent in not noticing the truck's dangerous proximity to the track? This case is notably like *Taylor v. Western Md. Rwy. Co.*, 157 Md. 630, 147 A. 531.

The appellant seeks to invoke the doctrine of this court in *Pennsylvania R. Co. v. Bell Concrete Const. Co.*, 153 Md. 19, 137 A. 503. We think that case distinguishable in several material respects. There, unlike here, the railroad had made specific provisions for the plaintiff's trucks and workmen to go over the track to load sand from a second track. Unexpectedly a car was released and struck the plaintiff's truck. Under such circumstances, this court held that the plaintiff was not negligent as a matter of law in being where he was. In the case at bar the plaintiff had no occasion to park his truck afoul of the track. He could have pursued his work in perfect safety if he had parked a few inches away.

The appellant maintains that notwithstanding any possible contributory negligence on his part the trial judge should have granted his requested instruction on last clear chance. There was no testimony upon which such an instruction could properly be based. Nor was the instruction correct in its terms. The rule, which has been repeatedly enunciated in this Court, is that if the defendant has been guilty of negligence he is nevertheless not liable if the plaintiff's own negligence has contributed to his injury. For the defendant to

be held liable despite the plaintiff's contributory negligence, the defendant must be shown to have had knowledge of the plaintiff's imminent danger and an opportunity in time to avoid injuring him. It is sometimes said the defendant's knowledge may be actual or constructive to invoke the last clear chance doctrine, *Penna. R. Co. v. Bell Concrete Const. Co., supra*; but by this it is not meant that the defendant's original negligence without more may serve again to charge him with last clear chance. Something new, or independent, must be shown, which gave the defendant a fresh opportunity to avert the consequences of his original negligence and the plaintiff's contributory negligence. Otherwise, the mere primary negligence plus contributory negligence would result in recovery, which is not the correct rule of law. For the reasons indicated by Chief Judge Bond in the *Bell* case, the plaintiff's requested instruction was not proper here.

Accordingly, the alleged errors in the court's instructions which severely narrowed the issue for the jury cannot be complained of by the appellant. When the case was submitted to the jury, he was given an opportunity—slight, it is true—to which under the undisputed facts he was not entitled. It is manifest that his misfortune resulted from his miscalculating the distance between the truck and the track.

*Judgment affirmed, with costs.*

HAMMOND, J., Concurs in the result.