## MELDRUM *v.* KELLAM DISTRIBUTING COMPANY

[No. 47, October Term, 1956.]

*Decided January 8, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*John W. T. Webb* and *Walter V. Harrison,* for appellant.

*John B. Robins,* with whom were *Stanley G. Robins* and *Robins & Robins* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an action for property damage and loss of use of a tractor-trailer truck damaged in an intersectional collision in Salisbury on March 18, 1955; the tractor-trailer truck of plaintiff (appellee here) was making a left turn from a boulevard "stop street" on a green light when struck by the car of defendant (appellant here) which was coming on the boulevard straight through the intersection from the opposite direction. The case was tried before a jury in the Circuit Court for Wicomico County, which returned a verdict in favor of the plaintiff. Defendant's motion for a directed verdict had been overruled, and his motion for judgment *n. o. v.* was denied. From these rulings defendant has appealed.

The collision occurred while the tractor-trailer owned by the appellee was being operated by its employee, Gilbert H. Calloway, and appellant was driving his own passenger automobile. It occurred at the intersection of Isabella Street and the Salisbury Boulevard in Salisbury, Wicomico County, at about noon.

At this point, the Boulevard is a four-lane highway running north and south; it is straight and level for a considerable distance in each direction from the intersection. It is about 60 feet wide, with a narrow macadam strip marking the center and dividing north-bound and south-bound lanes. There are two lanes for moving traffic in each direction and cars are permitted to park at the curb on the west side (to the right for the south-bound driver).

Isabella Street intersects the Boulevard at approximately right angles, and is 27 feet wide at the intersection. Traffic movement on the intersecting streets is controlled by an alternating red-yellow-green traffic light.

The truck of the plaintiff was a tractor-trailer combination tank truck, of the familiar type designed for hauling petroleum products over the highways. It was forty-three feet long, and at the time of the accident was empty. Meldrum, the defendant, was driving a Chrysler car, in which his wife was a passenger.

Calloway, driving plaintiff's truck, was headed north on the Boulevard, intending to turn west (left for him) onto Isabella Street, to pick up a load in Salisbury and return to Virginia. Meldrum was driving south on the Boulevard, intending to go straight through the intersection; his destination being Virginia Beach.

According to Calloway's testimony, the traffic light was red for him when he approached the Isabella Street intersection, and he stopped. When the light changed to green, he saw Meldrum's car about 75 yards to the north, heading south, on the inside or curb side of the highway. Calloway was unable to judge the speed of the oncoming car, but he thought he had plenty of time to make his turn, and started across. When his tractor was into Isabella Street and part of his trailer, he felt the impact. Calloway testified that his directional lights were working, indicating a turn, before he turned. There was no evidence that he ever observed Meldrum's car after he started to make his left turn. He also testified that he turned sharply, and at the time of the accident his rig extended almost straight across the Boulevard.

The truck was hit by Meldrum's car on its right side just

forward of the tandem rear wheels. The actual distance of the point of impact from the rear of the truck was variously estimated at from ten to twelve feet (Calloway) or six to eight feet (Police Officer Barnett). The truck came to rest with its rear projecting into the Boulevard about six to eight feet, according to the estimate of Officer Barnett. The Meldrum car was still headed south, hooked into the right side of the truck. It was damaged in the front, and especially the left front. There were no skidmarks and all debris was directly in front of the car.

Calloway and Officer Barnett testified that Meldrum said after the accident that he never saw either light or truck. Meldrum did not deny making the statement, but did not remember it.

Meldrum testified on the witness stand that he was traveling thirty-three to thirty-five miles an hour as he approached the intersection. (The speed limit was twenty-five at this point, but he testified that he thought it was thirty-five.) He further testified that he saw the truck and the light, which was green when he observed it. He did not see any directional lights and assumed the truck was going straight through the intersection. He continued to watch the traffic light, in anticipation of its turning yellow, and then, when that possibility had passed, he saw the truck directly in front of him. He testified that he was in the lane next to the parking lane, and estimated that the truck was then about 75 feet away, a "mountain in front of" him; he tried to turn left to avoid it but they collided.

There are only two questions to be decided on this appeal: (1) Was the lower court, under the circumstances disclosed by the evidence, justified in submitting the case to the jury upon the doctrine of last clear chance; and, (2) was the plaintiff's driver guilty of contributory negligence as a matter of law?

We shall consider the latter first. Sec. 197, of Art. 66½ of the Code (1951) reads as follows:

"(Vehicle Turning Left at Intersection.) The driver of a vehicle within an intersection intending

510

to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard."

It is conceded by both sides that appellee's truck was at a stop within the intersection, and the driver thereof had a right to make a left turn when the green light faced him. This driver testified when the light turned green his truck was standing still, and he saw Meldrum approaching from the opposite direction, about 75 yards away, at a speed he was unable to judge. He was driving a truck 43 feet in length. If the other car were traveling at 30 miles per hour, (Meldrum estimated he was moving 33 to 35 miles per hour) it would arrive at the place where the plaintiff's truck was in about 5 seconds. We think, under these circumstances, appellant was close enough to the intersection "to constitute an immediate hazard". Plaintiff's driver was the unfavored operator, and the driver of the passenger car was the favored one. The above statute directed the unfavored driver to yield "the right of way". "Right of way" is defined as: "The privilege of the immediate use of the highway." Art. 66½, Sec. 2 (44) Code (1951). The mandate of the above statute that one who intends to make a left turn shall yield the privilege of the immediate use of the highway means just what its terms say with clarity and precision; and it does not mean that the front portion only of a long truck shall yield the right of way, but the truck in its entirety shall do so. It is to be construed as requiring all of the unfavored vehicle to permit the immediate use of the highway; and not so construed as permitting an unfavored driver, who can quickly maneuver a part of his vehicle in the path of the favored driver, to require the favored driver then to yield the right of way. In addition, the law recognizes a clear distinction in what constitutes due care between pedestrians and ordinary vehicles on the one hand and heavy and ponderous trucks and tractor-trailer combinations on the other; and, because of the dangerous and unwieldy nature of the latter, calls upon their operators for the exercise of greater vigilance to avoid injury to others. *United*

*Rwys. Co. v. Sherwood Bros.,* 161 Md. 304, 309; *Nat. Contr. Co. v. Balto. Trans. Co.,* 185 Md. 158, 164. Assuming, without deciding, appellant were guilty of negligence, under the above circumstances and with the above named obligations, we think the operator of appellee's truck was guilty of contributory negligence as a matter of law in starting from a stand-still and making a left turn across a four-lane highway about 60 feet in width, when, in broad daylight, he had seen approaching traffic as close as he testified to. *Gudelsky v. Boone,* 180 Md. 265. In doing so, we recognize and reaffirm what this court, on many occasions, has said is necessary to constitute contributory negligence as a matter of law. The rule is, the act relied upon to establish the existence of contributory negligence as a matter of law must be distinct, prominent and decisive, and one about which ordinary minds would not differ in declaring it to be negligent. Where the nature and attributes of an act relied upon to show negligence contributing to an injury sustained can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon ˙and characterize it, and it is not for the court to determine its quality as a matter of law. *State v. Carroll-Howard Sup. Co.,* 183 Md. 293, 301; *Victor Lynn Lines, Inc. v. State,* 199 Md. 468, 474. We think the actions of the appellee's driver, bring him squarely within the above rule, so many times enunciated by this court.

The appellee relies heavily upon the cases of *Taxicab Co. v. Ottenritter,* 151 Md. 525, and *Carlin v. Worthington,* 172 Md. 505, 508, but they are easily distinguishable on the facts.

We will now consider whether the doctrine of last clear chance should have been submitted to the jury. This rule is generally regarded to have had its origin in the famous "donkey case", *Davies v. Mann,* 10 M. & W. 546. Davies had fettered his donkey so that it could not escape, and negligently left it on the highway. Mann's servant, driving at a fast rate and carelessly, i. e. "at a smartish pace along the road", ran over the donkey. Parke, B., said in effect: Notwithstanding previous negligence of the plaintiff, if, at the time when the injury was committed, it might have been avoided by the ex-

ercise of reasonable care and prudence on the part of the defendant, an action will lie.

The report fails to show whether Mann knew of the donkey's presence on the highway. As above stated, the rule did not require such knowledge. In the later decisions under the rule, there is a division of opinion relative to such a requirement. The rule, as it is applied in Maryland, has been so frequently and recently announced by the Court of Appeals, we shall not discuss the rule elsewhere. In *Victor Lynn Lines, Inc. v. State, supra,* it is set forth as follows: "The basis of the doctrine of last clear chance is that the actor either has actual knowledge, or is under some legal duty which charges him with knowledge, (a) that if he persists in a course which he is pursuing it will result in injury to another, (b) which the other cannot, because of ignorance or disability, be reasonably expected to avoid, (c) when the actor either has or is chargeable with that knowledge in time by the exercise of ordinary care to avoid injuring the plaintiff, but (d) fails to do so."

Many years ago, it was pointed out by this Court that the doctrine is only applicable when the defendant's negligence in not avoiding the consequences of the plaintiff's negligence is the *last* negligent act; and, cannot be invoked when plaintiff's own act is the final negligent act, or is *concurrent* with defendant's negligence. *McNab v. United Rwys. Co.,* 94 Md. 719; *United Rwys. Co. v. Sherwood Bros., supra.* And in two rather recent decisions this Court made explanations of the rule as above propounded. In *Peregoy v. Western Md. R. R. Co.,* 202 Md. 203, 211, it was stated that it is sometimes said the defendant's knowledge may be actual or constructive; but this does not mean that defendant's primary negligence without more may serve again to charge him with a last clear chance. "Something new, or independent, must be shown, which gave the defendant a fresh opportunity to avert the consequences of his original negligence and the plaintiff's contributory negligence. Otherwise, the mere primary negligence plus contributory negligence would result in recovery, which is not the correct rule of law." And, in *West v. Belle Isle Cab Co.,* 203 Md. 244, 252, this Court stated, "To bring the doctrine [last

clear chance] into play, the negligence of the defendant must be consequential to that of the plaintiff and not concurrent".

From the record, we are unable to discover any basis for the application of this doctrine; consequently, it was inappropriate to include the same in the court's charge to the jury. As above stated, the rule is predicated upon a clear chance by the defendant to avoid injury to the plaintiff after the contributing causes have placed plaintiff in a position of danger. In this case, appellant had a right to anticipate appellee's driver would remain at a stop and permit him to pass, as he was quite near to appellee's truck. There is no showing in the evidence he had a clear chance to avoid injury to the plaintiff's truck by the exercise of ordinary care, after plaintiff's driver pulled quickly in front of him. Also, we think the negligence of appellee's driver continued until the happening of the collision; which, again assuming without deciding appellant were guilty of negligence, would amount to concurrent negligence, and prevent this from being a proper case for the application of the doctrine of last clear chance.

As we hold the appellee's driver was guilty of contributory negligence as a matter of law and the rule concerning last clear chance was inapplicable, the judgment of the lower court must be reversed, and it is unnecessary to consider any further question presented.

> *Judgment reversed, and judgment entered for the defendant below for costs. Costs of this appeal to be paid by the appellee.*