474 A.2d 556

**Peggy RITTER et al.**

v.

**Salvatore Anthony PORTERA et al.**

**No. 981, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

May 8, 1984.

Certiorari Denied Sept. 14, 1984.

66

John E. Harris, with whom was Larry L. Lockhart, Baltimore, on brief, for appellants.

M. King Hill, III, Towson, with whom were Joseph C. Wich, Jr. and Cook, Howard, Downes & Tracy, Towson, on brief, for appellees.

Argued before GILBERT, C.J., and GARRITY and BELL, JJ.

GILBERT, Chief Judge.

The parties seem to agree that the appellant, Sherry Lee Schiller (Schiller),[1] was guilty of contributory negligence when she started to perch herself on the hood of the motor vehicle of the appellee, Salvatore Anthony Portera (Portera),[2] in order to ride "maybe fifty feet." The parties seem to agree that Portera, the operator of the vehicle, was primarily negligent in moving the car while Schiller was sitting on or about to sit on the hood of the automobile. Where the parties disagree is over the conclusion by the trial judge that the "doctrine of last clear chance" was inapplicable and that Schiller's contributory negligence barred recovery from Portera as a matter of law.

At the conclusion of the evidence offered by Schiller, the trial judge granted a directed verdict in favor of Portera. Schiller appealed to this Court. We reverse because we think the last clear chance doctrine to be apposite. Accordingly, we shall remand the matter to the Circuit Court for Howard County in order that the case may be retried. We now explain why we take that action.

---

1. Sherry Schiller's mother, Peggy Ritter, was also a party plaintiff and an appellant in this case.

2. Vincenzo Portera, the father of Salvatore, was joined as a party defendant on the theory of *respondeat superior* and is an appellee here.

*The Facts*

The accident occurred in the daylight hours of October 20, 1978, on a dry and clear day. Schiller, who was then age seventeen years, testified that she and her friends, Margie Kelly and Consetta Portera, the sister of the appellee, were walking on the side of Greenway Drive when the appellee drove up and stopped his 1969 Dodge Polara automobile near where they were standing. The Portera car was then approximately "one or two houses away" from the Portera residence. Schiller told the judge and jury in the circuit court:

> "At that time he [Portera] stopped his car, right next to us, in the middle of the road, we were to the side and he said, do you want a ride. Consetta, his sister said, yes, and motioned with her hand, ... and said come on. She got on the car in front of ... [appellee] and Margie got on the center of the car and I was starting to get on when ... [appellee] all of a sudden took off. I had never sat down yet—
>
> . . . .
>
> I had my feet on the bumper. I hadn't sat down yet and the car took off. I fell forward and I guess I started to fall to the side and finally, with the car moving, I had ahold of the bumper ... and it was dragging my body."

The car accelerated very fast, as if it had been "floored," and Schiller was dragged for 20 to 25 feet.

With respect to the cross-examination of Schiller, the transcript disclosed:

> "Q. [A]s I understand it, you got your feet up on the bumper of the automobile?
> A. Yes, that's right.
>
> . . . .
>
> Q. And you had your hands on the hood of the automobile?
> A. Um-hum.
> Q. To brace yourself?
> A. Yes.

Q. Was there anything else there to hold on to. Any gadget that cars have on the . . . hood?

A. There may—there may have been but I had . . . no time to get anything. I was just beginning to sit down.

. . . .

Q. Okay, now when Mr. Portera asked—made this statement about a ride, did you get in the door or anything or start to open the door of the automobile?

A. Well, no, I hadn't—I hadn't moved when Consetta said yeah, come on and headed for the front of the car. So Margie went and my natural instincts, I went and followed. I assume that's what he was—he wanted because he didn't say anything else and he—he just took off."

When asked whether she knew that riding on the car was dangerous, she replied:

"Well, his house was one or two houses down the street and being seventeen, you might look and not think of those kind of things."

Later, in response to a question of her consideration *vel non* of the danger involved, she said:

"[T]he shorter the distance, the less it [the danger] seemed. You have to remember his house was maybe fifty feet away and I did not expect him to do what he did."

■ Contributory negligence occurs whenever the injured party acts or fails to act in a manner consistent with the knowledge and appreciation, actual or implied, of the danger or injury that his or her conduct involves. *Menish v. Polinger Company,* 277 Md. 553, 560–61, 356 A.2d 233 (1976).

■ In the instant case Schiller knew or should have known that riding on the hood of a motor vehicle was a dangerous and perilous act. Furthermore, she knew or should have known that because of the motion of the vehicle she was subject to being thrown from or falling

from the car with the ever present possibility of injury. In today's mechanized society any normally intelligent 17 year old person knows that riding on the hood of a motor vehicle is dangerous and irresponsible. We think the trial judge correctly ruled that Schiller's conduct amounted to contributory negligence as a matter of law.

We turn now to a discussion of last clear chance. This doctrine first arose in *Davies v. Mann*, 10 Mees. & W. 548, 152 Eng.Reprint 588, 19 Eng.Rul.Cas. 190 (1842). It involved a plaintiff who fettered his ass on a highway in such a manner that the animal could not avoid carriages travelling on the road. The plaintiff was allowed to recover from the defendant who collided with the plaintiff's donkey. The Court reasoned that "although the ass may have been wrongfully there, still the defendant was bound to go along the road at such a pace as would be likely to prevent mischief." Parke, B. in *Davies*. Not unexpectedly, the doctrine arising from *Davis v. Mann, supra*, is nicknamed the "jack-ass doctrine." W. Prosser, Law of Torts (4th ed. 1971) § 66.

■ The rationale behind the concept of last clear chance is that "if the defendant has the last clear opportunity to avoid the harm, the plaintiff's negligence is not a 'proximate cause' of the result." *Id.*

Maryland first subscribed to *Davies v. Mann, supra*, in the case of *The Northern Central Railway Company v. The State of Maryland, use of Adeline Price*, 29 Md. 420, 96 Am.Dec. 545 (1868). There, Judge Alvey for the Court wrote:

"The mere negligence or want of ordinary caution on the part of the deceased, as was decided in *Tuff v. Warman*, 5 C.B.N.S. 573, would not disentitle the plaintiff to recover, unless it were such that, but for such negligence or want of ordinary caution, the misfortune would not have happened; nor, if the defendant might, by the exercise of care on its part, have avoided the consequences of the neglect or carelessness of the deceased. And, as an

illustration of this principle, *Davies v. Mann,* 10 M. & W. 545, may be referred to." 29 Md. at 436.

Subsequently, in *Kean v. B. & O.R.R. Co.,* 61 Md. 154, 167 (1884), then Chief Judge Alvey said for the Court:
"This general proposition [of contributory negligence], ... is subject to another which is equally well established, and that is, that though the plaintiff may have been guilty of negligence, and that negligence may, in fact, have remotely contributed to the production of the accident, yet, if the defendant could, in the result, by the exercise of reasonable care and diligence, in view of the circumstances of the case, have avoided the accident, the plaintiff's negligence, being the more remote cause, will not excuse the defendant."

To the same effect, *see Md. Central R.R. Co. v. Neubeur,* 62 Md. 391 (1884); *State, use of Kolish v. Wash., B. & A.R. Co.,* 149 Md. 443, 131 A. 822 (1926).
"Knowledge ... on the part of the person causing the injury, superior to that of the injured person, is the ultimate basis of the doctrine, and it follows that time is an essential element thereof, because the doctrine is not applicable unless the defendant discovered the plaintiff's peril in time, by the exercise of ordinary care, to have avoided the accident." 149 Md. at 457.

*See also Penna. R. Co. v. Bell Concrete Construction Co.,* 153 Md. 19, 137 A. 503 (1927); *Legum v. State, use of Moran,* 167 Md. 339, 173 A. 565 (1934); *Victor Lynn Lines, Inc. v. State, use of Pursel,* 199 Md. 468, 87 A.2d 165 (1952); *Meldrum v. Kellam Distributing Co.,* 211 Md. 504, 128 A.2d 400 (1957); *West v. Belle Isle Cab Co.,* 203 Md. 244, 100 A.2d 17 (1953); *Richardson v. State, use of Cox,* 203 Md. 426, 101 A.2d 213 (1953); *Peregoy v. Western Md. R.R. Co.,* 202 Md. 203, 95 A.2d 867 (1953); *Pitts v. Mahan,* 39 Md.App. 95, 382 A.2d 1092 (1978).

In *Benton v. Henry,* 241 Md. 32, 215 A.2d 226 (1965), the Court upheld a circuit court's ruling that an infant plaintiff who fell from the running board of an ice cream truck was

guilty of contributory negligence as a matter of law. The Court, in brushing aside an argument based on the doctrine of last clear chance, opined that even if the truck driver were negligent in failing "to ascertain the presence of the boy on the truck, there was a total failure to prove a new or second act of negligence by the appellee. The defendant's act of primary negligence may not be used again to serve as the last clear chance of avoiding the injury."

The Court then stated:

"To invoke the doctrine, the negligence of the defendant must be *sequential* to that of the plaintiff and not concurrent." (Emphasis added.) 241 Md. at 35, 215 A.2d 226.

■ When we view the facts of the matter *sub judice,* we observe that Schiller negligently sat or was about to sit on the hood of Portera's automobile. She thus placed herself in a position of grave peril. By so doing, she was, as we have previously said, guilty of contributory negligence as a matter of law. *Benton v. Henry, supra.* Yet, Schiller's contributory negligence was not as a matter of law the proximate cause of the accident. It is crystal clear that Portera saw his sister, another young woman, and Schiller on the hood of his car. He could have, and indeed should have, refused to move the vehicle while they were so situate. Nevertheless, for whatever reason, he, according to the evidence offered by Schiller, "took off," "like somebody would floor the car or something."

The uncontradicted evidence of Schiller and her witness established that Portera undoubtedly, by the exercise of ordinary care, had the last clear chance to avoid the accident. In our view, it is difficult to conceive of a set of facts that would more clearly demonstrate the last clear chance to avoid injury to a person in peril.

We think Portera's sequential negligence satisfied *Benton*, and that the trial judge should not have taken the case from the jury on the motion for directed verdict.[3]

■ There was, however, no evidence to support the conclusion that Salvatore was acting as an agent of his father when the accident occurred. We, therefore, affirm the directed verdict entered in favor of Vincenzo Portera.

JUDGMENT AFFIRMED AS TO VINCENZO PORTERA.

JUDGMENT REVERSED AS TO SALVATORE ANTHONY PORTERA AND CASE REMANDED FOR A NEW TRIAL.

COSTS TO BE PAID BY APPELLEE, SALVATORE ANTHONY PORTERA.

---

**3.** The allegation of Portera's conduct, if true, approaches an intentional act or reckless disregard of the safety of Schiller. *See* 2 Restatement of Torts 2d (1965) § 479.