864 A.2d 201

NATIONWIDE MUTUAL INSURANCE COMPANY

v.

Gail ANDERSON, Individually, etc.

No. 2055, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Dec. 23, 2004.

Reconsideration Denied Jan. 27, 2005.

Mark E. Rosasco, Annapolis, for Appellant.

Raymond M. Hertz (James P. McElwaine, Jr. on the brief), Greenbelt, for Appellee.

Panel: DAVIS, DEBORAH S. EYLER and ADKINS, JJ.

DAVIS, Judge.

On June 10, 2002, appellee Gail Anderson [1] filed a Complaint as personal representative of her deceased daughter's estate against Renardo and Sean Clyburn and appellant Nationwide Mutual Insurance Company (Nationwide) [2] in the Circuit Court for Prince George's County. A settlement was reached between appellant and Renardo and Sean Clyburn; the Clyburns were subsequently dismissed from the action on October 10, 2002. The matter proceeded to trial on July 8, 2003 and, on July 9, 2003, the jury returned a verdict in favor of appellee and awarded appellee $155,000 in damages. On appellant's motion, and with appellee's consent, the award was reduced to $80,000. On July 11, 2003, appellant filed a Motion for Judgment Notwithstanding Verdict, which was denied by the trial judge (Clarke, J.). Appellant timely filed an appeal on October 29, 2003.

Appellant presents one question for our review, which we re-phrase as follows:

Did the trial court err in denying appellant's Motion for Judgment Notwithstanding Verdict?

---

1. Appellee, in her capacity as the personal representative of her deceased daughter's estate, and the Decedent will hereinafter be referred to interchangeably as appellee.

2. Nationwide is a party to this appeal because appellee, Gail Anderson, the mother of the Decedent, Shereka Jones, was insured by the defendant, Nationwide Mutual Insurance Company. Defendant Renardo Clyburn's insurer paid the limit of $20,000 on its policy and Nationwide paid Anderson after a jury returned a verdict against Nationwide, which had exhausted Anderson's limit on her uninsured motorist policy.

We answer the question in the affirmative and, accordingly, reverse the judgment of the circuit court.

## FACTUAL BACKGROUND

At the time of the events at issue, appellee, a police officer for the District of Columbia Police Department, lived with her four children in Landover, Prince George's County, Maryland. At approximately 6:30 p.m. on March 25, 2000, appellee's sixteen-year-old daughter, Shereka Jones, asked appellee for permission to go skating with her friend, Tamarah Willingham, who was also sixteen years old. After getting appellee's approval, Jones left the house. While appellee was under the impression that Jones was going to walk over to Willingham's house, Jones, instead, got into a white Cadillac Eldorado (Cadillac) driven by an individual who referred to himself as Sean Clyburn. It was later determined that the individual driving the Cadillac was actually Sean's brother, Renardo Clyburn,[3] who was twenty-nine years old at the time.

Clyburn, Jones, and another passenger named Louis then picked up Willingham at her house in Landover. Willingham testified that she had never met or seen Jones with Clyburn prior to that day. While the initial plan was for Jones and Willingham to go roller-skating, instead the group proceeded to a movie theater in Tyson's Corner, Virginia. On the way to Virginia, Clyburn stopped at a liquor store in Washington, D.C. and bought two cans of beer. According to Willingham's testimony, Jones drank both cans of beer. The group arrived in Tyson's Corner, watched a movie, and then, proceeded back to Maryland. After dropping off Louis at his home, Clyburn, Jones, and Willingham drove to Willingham's house. Their respite at Willingham's house was brief and, from there, the three drove to Jimmy's, a liquor store in Landover. According to Willingham's testimony, Clyburn purchased "some brown liquor" and some alcoholic "fruit coolers" for Willing-

---

3. Sean Clyburn, Renardo's brother, was the registered owner of the Cadillac. For the purposes of this opinion, any reference to "Clyburn" will refer to Renardo, unless otherwise indicated.

ham and Jones. All three occupants of the vehicle began drinking in the parking lot of the liquor store. According to Willingham's testimony, not only did she and Jones drink the "fruit coolers," but she witnessed Jones and Clyburn drinking the "brown liquor," as well.

As the vehicle was still parked in the lot outside of the liquor store, Jones asked Clyburn if she could drive the Cadillac and Clyburn obliged. The undisputed evidence in the record shows that, at the time of the alleged events, Jones did not have her license and had not otherwise received any driver training prior to that point. Nonetheless, Jones drove the Cadillac, with Clyburn in the passenger seat and Willingham in the rear seat, from the liquor store into Washington D.C. From there, Jones drove the group to an apartment complex in Temple Hills, where Clyburn's attempt to locate a friend who lived in the complex was unsuccessful. After Clyburn returned to the vehicle, Willingham requested to be driven home. As Jones drove the Cadillac out of the parking lot of the apartment complex, she struck a parked car. Willingham testified that Clyburn instructed Jones "to keep going." Upon arriving at Willingham's house in Landover, Jones and Willingham exited the vehicle. Willingham testified that she expected Jones to stay the night at her house. Clyburn, however, asked Jones to "come with him." Jones got back into the Cadillac with Clyburn and left Willingham at her house.

At trial, Darrell Bumbray testified that, in the early morning hours of March 26, 2000, he, his friend, Ryan Ifill, and another passenger were driving back from a club in Washington D.C. in Ifill's Nissan Stanza (Nissan). According to his testimony, they were traveling southbound on Branch Avenue and stopped at an intersection in front of a mall in Marlow Heights. Next to the Nissan was another vehicle and behind that vehicle was the Cadillac being driven by Jones. The group in the Nissan made visual contact with Jones as the cars were still stopped at the stoplight. Bumbray testified that, when the stoplight turned green,

[t]he Acura and [our Nissan], we both had took off and we are just driving and we got by the Chevrolet dealership down the street from where the light was and I saw a car coming up real fast in the rearview mirror and when [Jones] was beside us [she] put the middle finger [sic], it was with the left hand, and was driving with the right hand and she couldn't control [the Cadillac] going around the bend and the rear of the [Cadillac] smacked the front of us and we both started sliding to the side.

The Nissan slid sideways into a culvert on the shoulder of Branch Avenue. None of the passengers in the Nissan was injured. According to Bumbray's testimony, after the Nissan came to a stop, he, Ifill, and the other passenger exited the vehicle and approached the Cadillac, which had come to a stop farther down on Branch Avenue. Bumbray stated that the Cadillac had flipped over and was resting on its roof. Clyburn emerged from the vehicle out of the driver's side door from the passenger side. According to Bumbray, once he was out of the Cadillac, Clyburn exclaimed, " 'That bitch can't drive.' " Bumbray and his companions initially noticed that Jones was no longer in the vehicle. They found her in a ditch just a few feet in front of the Cadillac, not moving and bleeding profusely. Jones was later pronounced dead at the scene.

The Reconstruction/Report of Investigation (Report) completed by Corporal Teresa Watson of the Prince George's County Police Department, which was admitted into evidence at trial, postulated that, at approximately 2:42 a.m. on the night in question, the Cadillac, driven by Jones, crossed over from the right lane to the left lane, where the Nissan was driving. The Cadillac struck the right front fender of the Nissan, which caused the Nissan to slide sideways and into a culvert off of the shoulder of Branch Avenue. After the initial collision, the Cadillac, the Report suggests, "began to rotate counter clockwise and onto its side. [The Cadillac] slid on its side along the roadway edge for approximately 200 feet and came to rest on its roof. The driver of [the Cadillac] was thrown from the vehicle just prior to the vehicle's rest." At trial, Officer Watson concluded that, at the time of the acci-

dent, Jones was sixteen years of age, did not possess a driver's license, had a blood/alcohol content of .17, and was not using a seat belt. After taking measurements of the skid marks, the grade of the roadway, and the level of friction of the asphalt on Branch Avenue, she calculated that, at a minimum, the Nissan was traveling seventy-three miles-per-hour and the Cadillac was traveling eighty-seven miles-per-hour. The uncontroverted evidence in the record indicates that the maximum speed limit on that portion of Branch Avenue was fifty miles-per-hour.

At the conclusion of all of the evidence at trial, appellant's counsel orally made a motion for judgment, upon which the trial judge reserved ruling. Appellant's trial counsel additionally objected to the trial judge instructing the jury on, *inter alia,* the doctrine of last clear chance. The trial judge overruled the objection and, subsequently, instructed the jury on the doctrine. The jury returned a special verdict in appellee's favor, finding that Clyburn was negligent, Jones was contributorily negligent, and that Clyburn had the last clear chance to avoid the accident. The appellant filed a Motion for Judgment Notwithstanding Verdict (Motion). On October 20, 2003, appellant's Motion was denied.

This appeal followed.

## LEGAL ANALYSIS

Appellant's sole assignment of error on this appeal, as set forth in its brief, is:

Plaintiff never presented evidence of Clyburn's consequential negligence, instead arguing again and again his primary negligence. There must be two acts of negligence, interrupted by the plaintiff's negligence, in order for the [last clear chance] doctrine to apply. A review of the uncontested facts in the motor vehicle accident report and trial transcript indicate Jones was negligent. Moreover, her negligence was the final negligent act and concurrent with her death.

For Jones to recover under the doctrine of last clear chance, she needed to demonstrate that her negligence had ceased and that Clyburn had an opportunity to avoid his original negligence and Jones' contributory negligence. No such evidence was presented by Jones.

Adverting to the facts that Clyburn had provided the sixteen-year-old driver with the keys to the car, permitted her to proceed to drive the vehicle, and was in the passenger seat within reach of the ignition and steering column, appellee argues that "[t]he last clear chance to avoid this accident presented itself to defendant Clyburn when an intoxicated and un-licensed sixteen year old Shereka Jones exited his vehicle, intending to spend the night with her girlfriend. Unfortunately, Mr. Clyburn failed to avail himself of this opportunity and called Ms. Jones back to his vehicle and put her behind the wheel, sealing her tragic fate. That act, in and of itself, was enough to warrant giving the requested jury instruction on last clear chance, and to support a jury finding in favor of appellee." In count one of the complaint, specifically paragraph 24, citing Jones's inexperience and intoxicated condition, appellee alleged negligent entrustment.[4]

The sum total of appellant's argument is that the trial judge erroneously instructed the jury on the doctrine of last clear chance because it is undisputed that Jones's contributory negligence occurred concurrently with Clyburn's primary negligence. Clyburn, appellee avers, had a fresh opportunity to prevent the injury to Jones from the time Jones re-entered the Cadillac after Willingham departed to the moment the accident occurred on Branch Avenue.

# I

Maryland Rule 2–532(a) provides that, "[i]n a jury trial, a party may move for judgment notwithstanding the verdict

---

4. When asked, during oral argument, before the panel of this court, appellee conceded that the gravamen of counsel's position was the decedent's status as a minor and that, had Jones been an adult, his argument would be severely undermined.

only if that party made a motion for judgment at the close of all the evidence and only on the grounds advanced in support of the earlier motion." In the event that a trial court "reserves ruling on a motion for judgment made at the close of all the evidence, that motion becomes a motion for judgment notwithstanding the verdict if the verdict is against the moving party...." Md. Rule 2–532(b). In essence, a motion for judgment notwithstanding verdict (JNOV) "tests the legal sufficiency of the evidence." *Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 326, 389 A.2d 887 (1978). Our goal when reviewing the trial judge's denial of appellant's Motion is to "determine whether the record contains legally relevant and competent evidence, however slight, from which a jury rationally could have found in appellee's favor." *Southern Management Corp. v. Taha,* 137 Md.App. 697, 714, 769 A.2d 962 (2001), *rev'd on other grounds,* 367 Md. 564, 790 A.2d 11 (2002). We are required to view the evidence in a light most favorable to the prevailing party and " 'assume the truth of all evidence and inferences as may naturally and legitimately be deduced therefrom....' " *Houston v. Safeway Stores, Inc.,* 346 Md. 503, 521, 697 A.2d 851 (1997)(quoting *Smith v. Bernfeld,* 226 Md. 400, 405, 174 A.2d 53 (1961)). The denial of a motion for JNOV is in error, however, "[i]f the evidence ... does not rise above speculation, hypothesis, and conjecture, and does not lead to the jury's conclusion with reasonable certainty...." *Jacobs v. Flynn,* 131 Md.App. 342, 353, 749 A.2d 174 (2000). Additionally, we may reverse the trial court's judgment if the denial of appellant's Motion was "legally flawed." *Taha,* 137 Md.App. at 714, 769 A.2d 962.

## II

The doctrine of last clear chance has been applied in this State for over 130 years and has remained relatively unchanged during that time. *See Ritter v. Portera,* 59 Md.App. 65, 70, 474 A.2d 556 (1984)(discussing *The N. Cent. Ry. Co. v. Maryland, ex rel. Adeline Price,* 29 Md. 420 (1868)). Essentially, the last clear chance doctrine is a plaintiff's defense to a defendant's allegation that the plaintiff was contributorily

negligent. *See State, ex rel. Kolish v. Wash., Baltimore & Annapolis Elec. R.R. Co.,* 149 Md. 443, 457, 131 A. 822 (1926).

In the recent case of *Carter v. Senate Masonry, Inc.,* 156 Md.App. 162, 168–169, 846 A.2d 50,54 (2004), we reviewed the elements requisite to an invocation of the doctrine of last clear chance:

As this Court explained in *Burdette v. Rockville Crane Rental, Inc.,* 130 Md.App. 193, 216, 745 A.2d 457 (2000):

[T]he doctrine of last clear chance permits a contributorily negligent plaintiff to recover damages from a negligent defendant if each of the following elements is satisfied: (i) the defendant is negligent; (ii) the plaintiff is contributorily negligent; and (iii) the plaintiff makes "a showing of something new or sequential, which affords the defendant a fresh opportunity (of which he fails to avail himself) to avert the consequences of his original negligence."

The theory behind the doctrine is that "if the defendant has the last clear opportunity to avoid the harm, the plaintiff's negligence is not a 'proximate cause' of the result." *Id.* at 215, 745 A.2d 457 (quoting W. Prosser, Law of Torts § 66 (4th ed.1971)).

"A fresh opportunity" is the operative phrase, for the doctrine will apply only if "the acts of the respective parties [were] sequential and not concurrent." *Id.* at 216, 745 A.2d 457. In other words, the defendant must have had a chance to avoid the injury after plaintiff's negligent action was put in motion. *Liscombe v. Potomac Edison Co.,* 303 Md. 619, 637–38, 495 A.2d 838 (1985). The doctrine "assumes" that, after the primary negligence of the plaintiff and defendant, "the defendant could, and the plaintiff could not, by the use of the means available avert the accident." *United Rys. & Elec. Co. v. Sherwood Bros.,* 161 Md. 304, 310, 157 A. 280 (1931). In this way, the defendant should have recognized and responded to the plaintiff's position of "helpless peril." *Baltimore & O.R. Co. v. Leasure,* 193 Md. 523, 534, 69 A.2d 248 (1949).

Our research revealed more than four dozen reported Maryland cases discussing the last clear chance doctrine. Its history in our State law dates back to 1868.. *See Burdette,* 130 Md.App. at 215–16, 745 A.2d 457 (tracing the doctrine's roots to English common law); *Ritter v. Portera,* 59 Md.App. 65, 70–72, 474 A.2d 556 (1984) (same); *see also N. Cent. Ry. Co. v. State,* 29 Md. 420, 436 (1868) (first reference of the doctrine in Maryland law). The doctrine is more often described than applied because of the requirement that plaintiffs show a new act of negligence following their own actions.

 The Court of Appeals has previously explained:
Knowledge, therefore, on the part of the person causing the injury superior to that of the injured person is the ultimate basis of the doctrine, and it follows that time is an essential element thereof, because the doctrine is not applicable unless the defendant discovered the plaintiff's peril in time, by the exercise of ordinary care, to have avoided the accident.
*Kolish,* 149 Md. at 457, 131 A. 822. Thus, in order for the doctrine of last clear chance to apply, "the acts of the respective parties must be sequential and not concurrent." *Burdette,* 130 Md.App. at 216, 745 A.2d 457. In other words, last clear chance "is only applicable when the defendant's negligence in not avoiding the consequences of the plaintiff's negligence is the *last* negligent act; and, cannot be invoked when plaintiff's own act is the final negligence act, or is *concurrent* with defendant's negligence." *Meldrum v. Kellam Distrib. Co.,* 211 Md. 504, 512, 128 A.2d 400 (1957). The courts of this State have explicated that the doctrine "does not mean that defendant's primary negligence, without more[,] may serve again to charge him [or her] with a last clear chance." *Id.* It follows that, for a plaintiff to successfully raise the doctrine of last clear chance, evidence must be presented to show "something new or independent, which affords the defendant a fresh opportunity" to avoid the harm that ultimately occurred. *Cohen v. Rubin,* 55 Md.App. 83, 92, 460 A.2d 1046 (1983)(citing *MacKenzie v. Reesey,* 235 Md. 381, 201 A.2d 848 (1964)).

## III

On appeal, appellant concedes Clyburn's negligence. While appellee does not concede Jones's negligence, it is beyond cavil that Jones, as an unlicensed driver operating a motor vehicle under the influence of alcohol, was contributorily negligent as a matter of law. Consequently, the only question is whether there was evidence creating a jury question as to whether Clyburn had a last clear chance to avoid the accident that ultimately claimed Jones's life. Appellee argues that, when Clyburn, Jones, and Willingham returned to Willingham's house, Clyburn had a fresh opportunity to prevent the accident by allowing Jones to return with Willingham to her house instead of calling her back into the car. We reject this argument because, at the time all three individuals were at Willingham's home, Jones was no longer driving the vehicle and, as a result, there were no negligent acts being committed by either Jones or Clyburn. In the absence of any negligence committed by Jones or Clyburn at the time, there necessarily cannot be a last clear chance.

Once Jones re-entered the Cadillac upon Clyburn's request, a new set of negligent acts commenced. As for Clyburn's actual or constructive knowledge of whether Jones possessed a driver's license, the evidence in the record is not entirely clear. For the purposes of our analysis, we shall view the evidence in a light most favorable to appellee, the prevailing party, and assume that Clyburn had, at the very least, constructive knowledge that Jones was not authorized by the State to operate a motor vehicle on public roads. The fact that Clyburn was aware that Jones had consumed alcoholic beverages is adequately supported by the evidence. Thus, Clyburn's primary act of negligence was allowing Jones, an intoxicated unlicensed person, to drive his vehicle from Willingham's house.

Jones, according to the record, was certainly aware she was not legally authorized to be behind the wheel of a car. Viewing the evidence in appellee's favor, we believe that a reasonable sixteen year old person would also be aware that consuming alcohol would seriously impair one's ability to drive a

motor vehicle. Jones was contributorily negligent by driving the Cadillac with knowledge that she did not have a driver's license and that she had previously consumed alcoholic beverages.

Appellee contends that from the time Clyburn and Jones left Willingham's house with Jones driving the Cadillac, up until the moment of the accident, Clyburn had a fresh opportunity to gain control of the vehicle, either by physical force or psychological influence. This argument exposes the most salient flaw in appellee's argument. The last clear chance doctrine contemplates two or more parties who are both negligent, but one is in helpless peril unable to avoid the imminent danger. The doctrine imposes liability on the party who is aware of the danger and is in control of the instrumentality and thus in a position to avoid the impending danger. A plaintiff may avail himself or herself of the last clear chance doctrine if the defendant is in a position to act with reasonable care on the fresh opportunity to prevent the likely consequences.

In the instant case, Jones was in control of the instrumentality that imperiled her life and the lives of her passengers and anyone else traveling on the night in question. Jones, however, was not the party in *helpless* peril because she was the only person in a position to prevent the tragic accident. Although it is conceded by all that Clyburn was negligent in allowing Jones to drive the Cadillac, the record is devoid of any evidence that Clyburn committed a negligent act subsequent to Jones's negligence and in addition to his earlier negligent acts. In other words, Clyburn, as the passenger, was not in control of the vehicle and was therefore not in a position to avoid the danger. When the Cadillac crossed over from the right lane and into the left lane and struck the Nissan, Jones, as the driver of the Cadillac, had committed the final negligent act.[5] In the absence of any evidence of a new

---

5. At oral argument, appellee's counsel conceded that the relevant time frame began when Jones was driving the Cadillac just before the collision, and did not include the events leading up to that point.

and independent opportunity available to Clyburn once the events that led to Jones's death were set in motion by her actions, the last clear chance doctrine is inapplicable to the instant facts.

## IV

Anticipating that her reliance on the last clear chance doctrine required appellee to demonstrate that "the defendant must have had a chance to avoid the injury after plaintiff's negligent action was put into motion," *Liscombe v. Potomac Edison Co., supra,* appellee, in positing that Clyburn exercised control over Jones, asseverates, "A jury could reasonably infer that defendant Clyburn was the person in control and the proverbial 'captain of the ship' by virtue of his ownership of the vehicle, the age difference between Mr. Clyburn and Ms. Jones, and her intoxicated condition." In an attempt to establish that Clyburn had an opportunity to avoid the injury, appellee, as we have previously discussed, argues that the steering wheel and the ignition of the Cadillac were within Clyburn's reach. Appellee's reliance on Clyburn's possessory interest in the vehicle, the disparity in age, and Jones's intoxicated state, is an attempt to overcome the facts that it was Jones who appellee contends was in helpless peril, despite the fact that she was in control of the vehicle, and it was Jones's negligence that was the direct and proximate cause of the injury. No new or independent opportunity for Clyburn to prevent the accident presented itself subsequent to Jones's negligence. Notwithstanding, appellee argues that Clyburn had a fresh opportunity to avoid the injury by reason of his control over Jones.

As noted, *supra,* appellee's counsel conceded, at oral argument, that his case would be substantially weakened if Jones had been an adult. Counsel's hypothesis that the fresh opportunity to avoid the injury was based on Clyburn's control over Jones, however, is misplaced because the case was tried and submitted to the jury on the theory of last clear chance. In proceeding in that manner, the parties and the court presumed—and indeed no one even at this juncture disputes—

that both Clyburn and Jones were negligent. If appellee's theory of the case rested on negligent entrustment or some variation of that principle, appellee would have been required to maintain that there was no negligence on the part of Jones and that, throughout the evening, her actions were, essentially, directed and controlled by Clyburn. Having proceeded on a theory that presupposed Jones's negligence, appellee cannot now rely on lack of capacity on the part of the sixteen-year-old driver to bolster her theory of last clear chance.

In sum, the accident that took Jones's life was the direct result of her negligence. The circumstances of this case, while tragic, simply do not comport with the requisite elements of the doctrine of last clear chance. Clyburn's original and primary negligent conduct continued unabated from the point in time when he permitted Jones to drive his Cadillac to the fatal accident. There was, however, no fresh opportunity subsequent to Jones's contributory negligence which constituted a "last" chance to avert the impending danger. Moreover, the doctrine of last clear chance is not implicated when the party in control of the instrumentality that causes the injury is the "helpless" party the doctrine is designed to protect.

We hold that the trial court erred in instructing the jury on the doctrine of last clear chance and in denying appellant's Motion for JNOV. Pursuant to Md. Rule 2–532(f)(2), we reverse the trial court's denial of appellant's Motion JNOV and direct that the trial court enter judgment in favor of appellant.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**