## DIETRICH ET AL. v. CANTON RAILROAD COMPANY ET AL.

[No. 239, September Term, 1958.]

128

*Decided May 14, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Weldon Leroy Maddox* for the appellants.

*Jesse Slingluff* and *Mathias J. DeVito,* with whom were *Piper & Marbury* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

Charles Dietrich, driving his wife's automobile west on O'Donnell Street in Baltimore City, across single tracks of the Canton Railroad Company, was struck by a backing and unattached engine, proceeding north on the crossing. He sued to recover damages for personal injuries; his wife sued for damages to the automobile. The trial court directed verdicts for the defendant in her case, on the ground that the evidence of primary negligence was legally insufficient, and in his case on the lack of such evidence, and also on the ground of his contributory negligence.

O'Donnell Street at the point of collision is about 58 feet wide, consisting of two eastbound and two westbound traffic lanes separated by a 4 foot island. There is a sidewalk 6 or 7

feet wide on the south side, and a chain-link fence about 7 feet high. Dietrich testified he turned into O'Donnell Street, a boulevard, from Ponca Street, from 150 to 200 feet east of the crossing, and proceeded toward the tracks at a speed of about 20 miles per hour. The time was about 9:30 A.M. on Sunday morning, August 5, 1956. He was very familiar with the crossing, although it was not regularly used by the company, and apparently only for switching operations. There was a sign at or near the crossing reading: "Look out for the Locomotive," but no gates, electric lighting device, or watchman provided. The crossing was level, but there was a ten degree grade upwards toward Ponca Street. Visibility was good, although the street was wet. There was no traffic at the time except one automobile coming east on O'Donnell Street, some distance away. Although Dietrich testified that he could not see through the wire fence (the photograph introduced in evidence indicates otherwise), it is clear that, because of the grade and the height of the engine (22 feet), the engine could have been seen over the fence. Dietrich testified that he did not stop, look or listen. He did not hear the warning bell on the engine until he was about 10 feet from the tracks, when he saw the engine for the first time. Fearing a skid, he did not try to stop, but instead speeded up to cross first. He failed to do so, the engine striking the left side of his automobile. On the other hand, there was abundant evidence that the bell began ringing when the engine was at the whistle-post 15 to 40 feet south of the fence, and continued while the engine crossed the street. This was corroborated by an impartial witness. The engine crew saw Dietrich turn into O'Donnell Street, and proceed towards the crossing, apparently slowing down. Just as the engine reached the island in the center, Dietrich's car suddenly speeded up. The engine was traveling at a speed of less than 4 miles per hour, but it was too late to stop. A simple calculation shows that the engine traveled about 38 feet from the point where it reached the fence to the point of impact. The automobile must have traveled about 5 times that distance, at 20 miles per hour, in the same interval.

We think it is perfectly clear that Dietrich was guilty of contributory negligence and that there is no basis shown for

an invocation of the doctrine of last clear chance. *Sears v. Baltimore and Ohio Railroad Company,* 219 Md. 118, and cases cited. Nor can he bring himself within the line of cases where reliance upon the lack of a customary warning may present a jury question. Cf. *Patapsco R.R. Co. v. Bowers,* 213 Md. 78, and *Gosnell v. Baltimore & O. R. Co.,* 189 Md. 677. So far as Mrs. Dietrich is concerned, it is conceded that she would not be bound by the negligence of her husband, in her action for damages to her automobile, so we must consider further the question of primary negligence.

It is contended that primary negligence can be inferred both from the failure of the company to provide better warnings and from the conduct, or lack of due care, by the train crew. There was no evidence of any violation of company rules. Cf. *Pennsylvania R.R. Co. v. State,* 188 Md. 646. Nor was there any evidence of violation of statutory requirements. Sec. 600 of the Charter and Public Local Laws of Baltimore City (1949 Ed.), enacted by chapter 420, Acts of 1884, and relied on in the *Gosnell* case, *supra,* required the installation of safety gates at every grade crossing. The section was expressly repealed by Ordinance No. 1102 of the Mayor and City Council of Baltimore (1954-1955). Instead, new sections were added following Article 29, section 12, of the Baltimore City Code (1950), to provide in sec. 12C that the Director of Traffic is empowered to require the installation of such warning devices in the form of gates, flashing lights, signs, or otherwise, as the volume of traffic, the extent of use, and the physical conditions at each grade crossing may require. It was not shown that the railroad had been directed to provide or maintain any warning device at this crossing, other than the sign mentioned.

Appellants suggest that the City had no authority to pass Ordinance No. 1102. This seems to be based on the thought that the municipality may not alter a Local Law enacted by the legislature. Art. XI-A, § 3, of the Maryland Constitution provides, in part, that the Mayor and City Council of Baltimore "shall have full power to enact local laws * * * including the power to repeal or amend local laws * * * enacted by the General Assembly, upon all matters covered by the express powers granted * * *." It is clear that Baltimore City

has the power under its Charter to regulate the use of its streets by railroads. Charter and Public Local Laws, *supra,* § 6 (25). *Pressman v. Barnes,* 209 Md. 544, 556.

It is also contended that the train crew was negligent in failing to sound the bell on the locomotive before crossing the highway. But, the negative evidence that Dietrich did not hear the bell until he was 10 feet from the crossing cannot, under the circumstances of this case, support an inference that the bell was not ringing prior to the time he heard it, particularly in light of the positive testimony of the train crew that the bell was rung continually from the time the engine reached the whistle-post, and the testimony of the impartial witness that he heard the bell ringing before the engine reached the street. The rule in such cases is well stated in *United Rys. & Elec. Co. v. Crain,* 123 Md. 332, 347: "where the attention of those testifying to a negative was not attracted to the occurrence which they say they did not see or hear, and where their situation was not such that they probably would have observed it, their testimony is not inconsistent with that of credible witnesses who were in a situation favorable for observation and who testified affirmatively and positively to the occurrence. * * * But if it be shown that the witness could have observed the signal, had it been given, * * * the fact that he did not hear the signal is evidence sufficient to go to the jury tending to show that such warning or signal was not given."

Dietrich offered no explanation of his failure to hear the bell sooner, nor did he make any direct claim that it was not rung sooner. His testimony indicates that he was as indifferent in listening as he was in looking, since he said he saw and heard the train at the same time. Such a statement falls short of raising a positive inference that the bell was not rung; it "could not possibly have meant anything more than that [he] did not hear it, for there is nothing to indicate that [he] was in a position to know as a fact whether it [rang] or not, [he] was certainly not watching, and it does not appear that [he] was listening, and such evidence was not enough to carry the question to the jury against the positive testimony of every other witness in the case who professed to have any knowledge of the matter * * *." *Klein v. United Rys. & Elec. Co.,* 152 Md.

492, 504. In the light of the surrounding circumstances, his negative testimony did nothing to contradict the other witnesses' testimony that the bell was rung but remained negative. *State v. Baltimore & Ohio R. Co.,* 171 Md. 584, 594. See also *Western Md. Ry. Co. v. Myers,* 163 Md. 534, 537.

Moreover, the engine was moving at a moderate speed, and it was in plain view when the automobile was at least 150 feet from the tracks. The train crew could reasonably assume that the automobile driver saw the engine and would stop and yield the right of way. His action in apparently slowing down, and then speeding up, was particularly misleading. There was no opportunity to stop after he was seen to be in a position of peril. *Pennsylvania R.R. Co. v. State, supra* (p. 656). The proximate cause of the accident was his negligent conduct, and not the conduct of the train crew, or the absence of warning. The physical presence of the engine itself, in plain view, was an adequate warning. *Buczkowski v. Canton R.R. Co.,* 181 Md. 377, 380.

*Judgments affirmed, with costs.*